NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 19-325

AMANDA PROVOST

VERSUS

DONALD W. AGUILLARD, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20182583
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN E. CONERY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and John E. Conery, Judges.

AFFIRMED.

**Brian F. Blackwell**
**Blackwell & Associates**
**8322 One Calais Avenue**
**Baton Rouge, Louisiana  70809**
**(225) 769-2462**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
   **Amanda Provost**

**Robert L. Hammonds**
**Jon K. Guice**
**Danielle A. Boudreaux**
**Hammonds, Sills, Adkins & Guice, LLP**
**2431 South Acadian Thruway, Suite 600**
**Baton Rouge, Louisiana  70808**
**(225) 923-3462**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Donald W. Aguillard, Ph.D., Individually**
   **Donald W. Aguillard, Ph.D., as Personnel File Custodian for Lafayette**
      **Parish School Board**

**CONERY, Judge.**

Plaintiff, a public school teacher, sought a writ of mandamus ordering the removal of three documents from her personnel file pursuant to La.R.S. 17:1235(D). Defendant, the school's superintendent, filed exceptions of no cause of action and unauthorized use of summary proceedings. Following a hearing, the trial court sustained the exception of no cause of action, rendering the appropriateness of summary proceedings moot. Following review of Plaintiff's appeal, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Amanda Provost, was employed as a middle school teacher with the Lafayette Parish School System (LPSS) during the 2017-2018 school year. LPSS's Director of Human Resources advised Plaintiff by letter dated January 4, 2018 that she was being placed on administrative leave as follows:

> Based on a statement that was provided to us on January 3, 2018,[1] you will be placed on administrative leave with pay. You will remain on administrative leave until the investigation of this reported incident is

---

[1] The referenced handwritten, narrative "statement" from a fellow teacher, which apparently was not filed into the personnel file, and is thus not the subject of the mandamus action provides:

On Dec 21, Thursday morning, @ approximately 8:30, Amanda Provost and I were @ our classroom doors. She is directly across the hall from me.

Amanda was visibly upset and I asked her something like "Are you Ok?" or "What's wrong?" She began ranting about the school being a dictatorship.

She said:
[O]ur leader is a dictator.
I hate this school!!
I hate Nunez
I hate her kids
Her kids are stupid
No, her kids are smart like she is but they are dumb like she is[.]
I could just kill the whole family.

I asked, "What did you say?"

She said, "I could just kill the whole family."

At that point, Amanda walked away from her door and so I closed mine.

completed by the Lafayette Parish School System. You are not to go to the campus of Youngsville Middle School or contact anyone at the school until further notice.

Following that investigation, LPSS's Chief Administrative Officer explained

to Plaintiff by January 12, 2018 letter that:

This letter will serve as a formal reprimand for your failure to properly supervise students in your class at Youngsville Middle School.

The basis for this reprimand is summarized as follows. As you are aware, Human Resources has been investigating an allegation made against you. In a statement that you made to the Director of Human Resources, Suzanne Thibodeaux, regarding the allegation, you stated that you were not guilty of the allegation, as you were with your students. As part of the investigation, security camera video of your classroom's hallway was obtained from the morning of December 21, 2017. Mrs. Thibodeaux, Kaylum Vead, and myself reviewed the video from approximately 8:31 AM to 8:38 AM. The video footage clearly shows that during that 7 minute time frame you left your students in the classroom unsupervised several times. In one instance, you were out of the class for approximately 3 minutes with no verifiable reason.

Your failure to properly supervise your students is a safety issue for which you are responsible. Besides the lack of supervision, there does not appear to be effective classroom instruction taking placing during this time period.

After meeting with you on Thursday, January 11, 2018, I am concerned about your credibility and lack of honesty as you tried to defend the supervision and instruction of your class. You[r] explanation to us was contrary to what we observed on the security camera video.

This reprimand will be placed in your official personnel file. It is your responsibility to always monitor your class and to provide effective classroom instruction. These performance deficiencies must be corrected immediately. Failure to do so, will result in my recommendation to the superintendent for additional disciplinary action.

That same date, January 12, 2018, LPSS Superintendent Donald W. Aguillard

informed Plaintiff that:

Per Lafayette Parish School System Policy GBM, the Superintendent may transfer any employee from one position, school or grade to another by giving written notice to the employee of such intention to transfer.

2

This letter is notice that you are being transferred from Youngsville Middle School to N.P. Moss Preparatory School as a 5th Grade teacher. The official date of the transfer will be January 16, 2018.

If you have any questions concerning this transfer, contact the LPSS Human Resources Department.

In response, Plaintiff's counsel issued a February 21, 2018 letter to Dr. Aguillard and contended that, at the January 11, 2018 human resources meeting, Plaintiff denied the allegation that she left her students unsupervised "on December 21, 2017 from approximately 8:31 to 8:38[.]" Although Plaintiff was presented with school security camera footage in support of the "allegation[,]" counsel explained that Plaintiff stated "that Ms. Sultonah Scott, a teacher at the school supervised the students in her class during her absence[.]" Counsel further contended that, despite being informed of another teacher's involvement, human resource personnel failed to take "time to investigate whether Ms. Scott had supervised the students in Ms. Provost's class during her brief absence prior to presenting Ms. Provost with the reprimand document." Counsel attached Ms. Scott's affidavit to the February 21 letter, [2] and contended that: "Based upon the information provided to Ms.

_____

[2] Ms. Scott states in her February 2, 2018 affidavit that:

On Friday, January 12, 2018 I was requested by Amanda Guillory, Assistant Principal at Youngsville Middle School, to go to the Lafayette Parish School System's Human Resources Department to speak with Suzanne Thibodeaux …. When I arrived, I was called into Ms. Thibodeaux's office and asked if I had been asked by Amanda Provost to watch her class on December 21, 2017 around the times of 8:30 – 8:40 a.m. I said that it was long ago, but that I was in fact so asked by Ms. Provost. When I said it was so long ago, but Ms. Provost did ask me to watch her class, Ms. Thibodeaux insisted repeatedly I was lying. Then, a Mr. Callum entered the office and asked me to draw out the placement of the classrooms in the hall at the school and who each classroom belonged to. Ms. Thibodeaux said that she had video evidence that I was lying, and that in the video there was no proof that I was asked to watch the class. I asked to view the video but Ms. Thibodeaux said "[W]e can't just be showing everybody the video." When I refused to back down, Ms. Thibodeaux's demeanor changed and she became quite accusatory. Finally, when I was permitted to view the video Ms. Thibodeaux insisted again that I could not have been asked to watch Ms. Provost['s] class and when the video showed me in the hallway she stated that she had mistaken me for a child and immediately dismissed me.

3

Thibodeaux by Ms. Scott, the reprimand document should never have been placed in Ms. Provost's personnel file or if it had been so placed prior to the meeting with Ms. Scott it should have immediately been withdrawn and destroyed."

Continuing, Counsel requested the presentation of proof as to "each of the allegations contained in the January 4 document placing Ms. Provost on administrative leave [(Document A)], the January 12 document of reprimand [(Document B)] and the January 12 document containing the school reassignment [(Document C)]." "In the absence of such proof," the letter continued, "demand [was] made that the January 12 reprimand, the January 12 letter of transfer and the January 4 document placing her on administrative leave be removed from her personnel file and be destroyed."

When the School Board did not meet that demand,[3] Plaintiff filed a Petition for Writ of Mandamus, naming Dr. Aguillard, individually and in his capacity as the

_____

> The prior day I recited essentially the same sequence of events to Ms. Guillory at Youngsville Middle School.

> I have never heard Ms. Provost say that she wished or wanted to kill the principal of Youngsville Middle School or the principal's family.

[3] Although it did so after the filing of the present matter, LPSS's counsel responded by letter that:

> Neither the January 4 letter from Ms. Thibod[e]aux nor the January 12 letter from Superintendent Aguillard contains allegations and statements for which LSA-R.S. 17:1235(D) is applicable, as the January 4 letter merely provided notice to Ms. Provost that she was being placed on paid administrative leave pending investigation, and the January 12 letter provided notice to Ms. Provost that the Superintendent was exercising his authority to transfer Ms. Provost from one school to another. Nonetheless, enclosed please find a copy of a written statement received by LPSB staff to which there is reference made in the January 4 letter.

> The January 12 letter to Ms. Provost from Mr. Craig is a formal written reprimand due to Ms. Provost's failure to properly supervise students in her classroom at Youngsville Middle School. Said reprimand was based upon security video camera footage evidence. As stated in the reprimand letter to Ms. Provost, the video footage clearly shows that, in the time period from approximately 8:31 a.m. to 8:38 a.m., Ms. Provost left her students in the classroom unsupervised several times. As mentioned in your letter, another teacher, Sultonah Scott, is

4

personnel file custodian as Defendant. Plaintiff asserted that Document A was "based on an alleged 'statement' received from an unidentified person alleging Petitioner made threatening comments concerning the principal of Youngsville Middle School and her family." Document B, Plaintiff stated, "was based upon an allegation that Petitioner left students in her class unsupervised and was purportedly supported by a video obtained from a school security camera." She then explained that "Document C was alleged to be at the urging of the principal of Youngsville Middle School." Plaintiff attached each of the documents as exhibits to the petition.

Plaintiff further noted both her meeting with LPSS officials on January 12, 2018, as well as the subsequent meeting with Ms. Scott. Plaintiff alleged that Ms. Scott "advised Ms. Thibodeaux and Mr. Craig that the security camera video relied upon by them as supporting the allegation that Petitioner left her class unsupervised actually showed Ms. Scott in the hallway of the school either entering or leaving Petitioner's classroom in connection with her supervision of the class during Petitioner's absence." Despite that statement, Plaintiff contended, "Defendant nevertheless placed the reprimand in Petitioner's personnel file" and following demand "failed and/or refused to respond within a reasonable period of time by either (a) providing Petitioner with proof of the allegations contained in the

indeed seen in the video footage. Ms. Scott is seen on the video both entering and exiting Ms. Provost's classroom; however, she does so <u>prior to</u> the period of time upon which Ms. Provost's reprimand for failure to supervise is based (i.e. <u>prior to</u> the approximate 8:31 a.m. to 8:38 a.m. window).

As you indicated in your letter, you attended a meeting on January 11, 2018 with Ms. Provost and Ms. Thibodeaux, Mr. Craig, and Kaylum Vead, LPSB Assistant Director of Human Resources, at which time you and Ms. Provost viewed the referenced security video camera footage. As such, Ms. Provost already, long ago, received proof of any allegations and statements contained in the January 12 reprimand letter. If you and/or Ms. Provost wish to view that video again, it can be made available for inspection at LPSB Central Office upon your request.

5

Documents or (b) in the absence of such proof, removing the Documents from Petitioner's personnel file."

Plaintiff contended she was therefore, "entitled to have the Documents removed from her personnel file and destroyed." As in her demand letter, Plaintiff cited La.R.S. 17:1235(D) as authority for the mandamus action. That provision indicates:

> D. A school employee shall have the right to receive proof of any allegations and statements contained in a document placed in his file that the school employee believes to be inaccurate, invalid, or misrepresented. If such proof is not presented, the document containing the allegations and statements shall be removed from the school employee's personnel file and destroyed.

Defendant responded with the filing of an exception of no cause of action and an exception of unauthorized use of summary proceedings. As for the former, Defendant asserted that La.R.S. 17:1235(D) does not afford the remedy proposed based upon the allegations of the petition as it only affords a school employee the "right to receive proof" of allegations "contained in a document" placed into his or her personnel file. Absent an "allegation" contained in a document, Defendant maintained the statute required no such proof. Defendant pointedly denied that Document A, the administrative leave letter, and Document C, the transfer letter, contained such allegations.

Defendant conceded that Document B, the reprimand letter, contained an allegation of lack of supervision. Defendant contended, however, that Plaintiff admitted it presented her with the video tape on which it relied at the January 12, 2018 meeting, well before her proof of demand. Defendant asserted that La.R.S. 17:1235(D) provides no mechanism by which Plaintiff was entitled to "proof that he/she likes or believes is sufficient[.]" Defendant contended that the writ of

6

mandamus was "nothing more than an underhanded attempt to get legitimate documents removed from her personnel file[.]" Defendant noted that Plaintiff made no claim under La.R.S. 17:1235(A) and (B), which allows a Plaintiff further opportunity to rebut and respond to those documents.[4]

Finally, Defendant disputed that La.R.S. 17:1235(D) imposes any ministerial action that would be subject to a mandamus action. To the extent it does, Defendant argued, "it is not that which is prayed for by Provost - that is, to remove documents from personnel files and destroy them - but rather, at least prior to such, to provide proof of allegations contained in documents placed in personnel files." Defendant again contended that it provided evidence of any allegation contained in the document(s) by access to the video tape of the incident.

Following a hearing, the trial court sustained the exception of no cause of action. The resulting judgment sustained that exception and dismissed Plaintiff's petition. The remaining unauthorized use of summary proceeding was denied as moot.

Plaintiff appeals.

## LAW AND DISCUSSION

*Exception of No Cause of Action*

Provided by La.Code Civ.P. art. 927(A)(5), the exception of no cause of action questions the legal sufficiency of the plaintiff's petition by considering whether the law affords a remedy on the facts alleged. *Scheffler v. Adams and Reese, LLP*, 06-1774 (La. 2/22/07), 950 So.2d 641. "No evidence may be introduced at any time to

---

[4] Defendant explained that: "If an employee disagrees or is not satisfied with the proof provided, then that might be another issue for another day, but it is not the subject of a mandamus action"

support or controvert the objection that the petition fails to state a cause of action." La.Code Civ.P. art. 931. Rather, the exception of no cause of action is triable on the face of the pleadings and the petition's well-pleaded facts must be accepted as true. *Scheffler*, 950 So.2d 641. When, as here, a plaintiff attaches exhibits to the petition, the court may consider those exhibits in determining whether the law affords a remedy to the plaintiff under the petition's factual allegations. *See J. Boone Dev. v. Milton Water Sys.*, 18-99 (La.App. 3 Cir. 6/6/2018), 249 So.3d 888, *writ denied*, 18-1100 (La. 10/15/18), 253 So.3d 1310. Because the exception presents solely a question of law, appellate review of the trial court's ruling as to whether the petition states a valid cause of action is *de novo*. *Id.*

*School Employee Personnel Files Act*

By enactment of the School Employee Personnel Files Act, the legislature sought to "provide for the development and implementation of a uniform system for the use and maintenance of a school employee personnel file to be followed by all school systems." La.R.S. 17:1232. The legislature explained that it was therefore its intent:

> (1) To provide for the establishment of procedures for immediate notification to school employees of the filing of any document[5] into their personnel file;
>
> (2) To assure that each school employee has an opportunity to rebut and respond to any document placed into that school employee's personnel file.
>
> (3) To provide the time frame within which to file such a response and/or rebuttal.

---

[5] The Act defines "Document" as "written or otherwise tangible material intended to be or actually used as a part of or any evidence of the work history of any school employee including but not limited to any and all reports, comments, reprimands, correspondence, memoranda, evaluations, observations, and grievances relative to a particular school employee." La.R.S. 17:1233.

(4)     To assure that any document from a school employee's personnel file forwarded to another location shall be accompanied by the school employee's response and rebuttal to the document.

Louisiana Revised Statutes 17:1235 provides for a school employee's rebuttal and response to the placement of such documents as follows:

A.     Each school employee shall be given the opportunity to rebut and to respond to a document placed in his personnel file including but not limited to any document placed in such file on or before September 1, 1987.

B.     The rebuttal and response must be in written form and once filed shall be attached to the document to which the response and rebuttal applies, and thus become a permanent part of the school employee's personnel file as long as the document remains a part of the personnel file.

C.     No document or copy thereof, to which a response and rebuttal has been filed, shall be used for any purpose whatsoever unless the rebuttal and response or copy thereof is attached to the document or copy sought to be used.

D.     A school employee shall have the right to receive proof of any allegations and statements contained in a document placed in his file that the school employee believes to be inaccurate, invalid, or misrepresented.  If such proof is not presented, the document containing the allegations and statements shall be removed from the school employee's personnel file and destroyed.

E.     If, at anytime, a city, parish, or other public school board takes any personnel action against a school employee based upon any document that was placed in the employee's personnel file on or before September 1, 1987, the school employee shall be given the opportunity to rebut and respond to such document.

There is no indication that Plaintiff pursued "the opportunity to rebut and to respond" to the subject documents by the procedure advanced by Paragraphs A, B, and C of La.R.S. 17:1235.

Plaintiff instead filed this summary proceeding pursuant to Paragraph D, asserting that the three subject documents are contradicted by Ms. Scott's affidavit, which she contends is contrary to the "allegation" that she failed to supervise her

classroom. Given the LPSS's failure to present "proof" of its allegations, Plaintiff contends, La.R.S. 17:1235(D) directs Defendant to remove and destroy the subject documents. Plaintiff asserts that the statute is mandatory, not discretionary, and is therefore appropriately addressed by a writ of mandamus. *See* La.Code Civ.P. art. 3861.[6]

Following review, it is apparent that La.R.S. 17:1235(D) mandates an action on the part of the LPSS under certain circumstances. By the wording of the statute, however, that action is the presentation of proof of an allegation contained in a document. As correctly urged by Defendant, Documents A, B, and C, themselves, do not contain allegations for which no proof has been presented. Document A, "contains" no allegation as it is instead notice of leave *based* on an unnamed allegation. Attached to the petition, Document A indicates only that: "Based upon a statement that was provided to us on January 3, 2018, you will be placed on administrative leave with pay."

Document C similarly "contains" no allegation and is instead a notice of a transfer. Plaintiff's petition candidly indicates only that "Document C was alleged to be at the urging of the principal of Youngsville Middle School." Reference to the attached document does not support that contention but reveals an absence of either

---

[6] Louisiana Code of Civil Procedure Article 3861 provides that: "Mandamus is a writ directing a public officer, a corporation or an officer thereof, or a limited liability company or a member or manager thereof, to perform any of the duties set forth in Articles 3863 and 3864."

As pertinent to this suit, La.Code Civ.P. art. 3863 indicates that: "A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor."

an allegation or a statement. The document provides only that Plaintiff was "being transferred" from one school to another.

As neither Document A nor Document C "contain" an allegation or statement, Plaintiff's petition fails to state a cause of action under La.R.S. 17:1235(D), which requires proof of allegations and statements "contained" within a document placed into the personnel file. Certainly, "the interpretation of any statutory provision begins with the language of the statute itself." *McGlothlin v. Christus St. Patrick Hosp.*, 10-2775, p. 11 (La. 7/1/11), 65 So.3d 1218, 1227. In this instance, Plaintiff's petition provides no well pleaded facts that allow recovery under La.R.S. 17:1235(D) as prayed for with regard to those two documents.

Even assuming that Documents A and C are arguably "documents" that form part of Plaintiff's work history, Plaintiff did not timely follow the prescribed method of taking issue with those documents. She further failed to avail herself of the statutory method to make a permanent record of her rebuttal/response to such "documents," or timely seek their removal from her permanent record in accordance with La.R.S. 17:1235(A) and (B) or La.R.S. 17:1236(A) and (B).

Document B, the letter of formal reprimand due to her "failure to properly supervise students" in Plaintiff's class, is the only document of the three containing an allegation. Plaintiff's petition alleges that "Document B was based upon an allegation that Petitioner left students in her class unsupervised and was purportedly supported by a video obtained from a school security camera." In fact, Plaintiff's demand letter to Defendant, which Plaintiff attached to her petition, indicates that:

> A meeting was held on January 11. In attendance were Suzanne Thibodeaux, Director of Human Resources, Joe Craig, Chief Administrative Officer, Kaylum Vead, Assistant Director of Human Resources, Ms. Provost, and undersigned counsel. It was alleged during the meeting that on December 21, 2017 from approximately 8:31

11

to 8:38 Ms. Provost left her students unsupervised. *As alleged support for the allegation Mr. Vead presented video obtained from a school security camera.*

(Emphasis added.)  Thus, Plaintiff's petition, and the expanded factual allegation of the demand letter, indicate that LPSS provided the Plaintiff with the "proof" on which the allegation of Document B is based.  The Plaintiff therefore does not advance facts indicating that Defendant has failed to comply with La.R.S. 17:1235(D).

Instead, construction of the petition as a whole indicates that Plaintiff is contesting the adequacy of the "proof" underlying the allegation of the document(s) and, in turn, the LPSS's determinations regarding the formal reprimand and the transfer.  That sufficiency challenge is evident by Plaintiff's reference to Ms. Scott's affidavit and her challenge to the contents of the videotape.

Such an assessment of the adequacy of the "proof," however, is beyond the scope of La.R.S. 17:1235(D).  That provision relates strictly to the provision of proof, not the sufficiency, quality or assessment thereof.[7]  Simply, the statute does not extend the remedy sought against Defendant under the petition's factual allegations.

Accordingly, we find that the trial court correctly sustained the exception of no cause of action.

---

[7] Like the trial court, we do not further address that argument regarding the unauthorized use of summary proceedings as it is rendered moot by the ruling on the exception of no cause of action.

12

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assigned to Plaintiff/Appellant, Amanda Provost.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Courts of Appeal.